UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DENNIS CARNEY,

     Plaintiff,                        :       Case No. 2:18-cv-250

     -vs-                             Judge Sarah D. Morrison
                                   Magistrate Judge Elizabeth Preston Deavers

COLUMBUS CITY SCHOOLS
BOARD OF EDUCATION, *et al.*,
                                   :

     Defendants.

## OPINION AND ORDER

This matter is before the Court on the Motion for Judgment on the Pleadings filed by the City School Defendants (ECF No. 115), Plaintiff Dennis Carney's Memorandum Contra (ECF No. 119), and Defendants' Reply (ECF No. 121). For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

## I.    FACTUAL ALLEGATIONS

The following facts are alleged in the Amended Complaint.

Plaintiff Dennis Carney, a 65-year old Caucasian male, was employed as the Director of Purchasing for the Columbus City Schools School District (the "School District") for 15 years. (Amend. Compl., ¶¶ 7, 19, ECF No. 62). Defendant Columbus City Schools Board of Education (the "Board") is the governing body of the School District and was Plaintiff's employer. (*Id.* ¶ 8). At the relevant time, the Board was comprised of the following individually named Defendants: Gary Baker (President), Michael Cole (Vice President), W. Shawna Gibbs, Eric Brown, Mary Jo Hudson, Dominic Paretti, and Ramona Reyes (hereafter collectively referred to as the "Board Members"). (*Id.* ¶ 9). Mr. Cole and Ms. Gibbs are African American. (*Id.*). During Plaintiff's

1

tenure he received excellent performance reviews and was highly respected by his superiors. (*Id.* ¶ 19).

In January 2017, Plaintiff and his supervisor, Defendant Maurice Oldham (School District Chief Operating Officer), discussed and agreed that if Plaintiff retired, he would be rehired into the same position. (*Id.* ¶ 20). Mr. Oldham is African American. (*Id.*). Shortly thereafter, Plaintiff notified Mr. Oldham of his intent to pursue the retire/rehire option discussed. (*Id.* ¶ 21). Based on Mr. Oldham's representations and Plaintiff's own communications with other management and administrative staff, he believed the Board would approve his rehire. *(Id.* ¶ 22).

On February 15, the Board's Services Supervisor worked with Plaintiff to schedule hearing dates before the Board to accept Plaintiff's retirement and to rehire him. (*Id.*). At Mr. Oldham's request, Plaintiff provided a list of his accomplishments as Director of Purchasing to be forwarded to the Board. *(Id.* ¶ 23). Plaintiff also exchanged e-mails with several School District officials, who all represented that Plaintiff would be rehired after he retired. (*Id*. ¶ 24). After the Board published notice of Plaintiff's retirement (effective June 1, 2017) and that he was seeking reemployment, the District Superintendent sent an e-mail to various School District officials and the Board Members to express support for Plaintiff. (*Id.* ¶ 25).

On March 6, 2017, Defendant Columbus Branch 3117 of the NAACP facilitated a meeting between its leaders (including Defendant Nana Watson (President of Columbus Branch 3117 of the NAACP)) and school administrators (including Plaintiff, Mr. Oldham, and Defendant Terri Wise (School District Outreach Coordinator)) to discuss the Locally Economically Disadvantaged Enterprise ("LEDE") program and the Purchasing Department. (*Id.* ¶ 26). Ms. Wise and Ms. Watson are African American. (*Id.* ¶¶ 11, 14). At the meeting, an

African American man approached Plaintiff and stated that he wanted the School District to "do business with people that look like him," which Plaintiff took to mean he only wanted the LEDE program to do business with African Americans, not all minorities. (*Id.* ¶ 26). According to Plaintiff, neither himself nor the only other Caucasian in the room were invited to a NAACP meeting again. (*Id.*). Instead, the NAACP planned meetings about the School District's purchasing practices with the help of Ms. Wise without notifying Plaintiff. (*Id.* ¶¶ 28–30).

On March 21, the Board approved Plaintiff's retirement. (*Id.* ¶ 27). On March 30, the NAACP held a meeting attended by LEDE vendors and school administrators. (*Id.* ¶ 30). Mr. Cole and Ms. Gibbs were also present. (*Id.*). According to Plaintiff, the purpose of the meeting was to review Plaintiff's practices and his rehire legislation. (*Id.*). According to a Columbus Dispatch article, the result of that meeting was that the Board "had to mak[e] a Cultural Shift within the Administration," which Plaintiff took to mean his elimination. (*Id.*). Plaintiff was not notified of this meeting or told what was discussed. (*Id.*).

On April 20, Mr. Oldham informed Plaintiff that Defendants, NAACP, Ms. Watson, Defendant Ronda Watson Barber (publisher and editor-in-chief of OhioMBE[1]), and other minority activists were resisting his rehire, alleging that his purchasing practices were a barrier to minority-owned businesses because of lack of inclusion efforts. (*Id.* ¶ 32). On April 25, Ms. Barber, an African American, e-mailed Mr. Oldham, the Superintendent, and the Board Members, accusing Plaintiff of practicing "flat-out racism" in managing the Purchasing Department and causing the School District to fail to meet LEDE program goals. (*Id.* ¶ 33).

On April 28, Mr. Oldham informed Plaintiff that the Board did not have enough votes to

---

[1] OhioMBE's website describes OhioMBE as "Ohio's Largest Black-owned Business Newspaper." OHIOMBE, https://ohiombe.com (last visited Apr. 16, 2020).

rehire him, and that the rehiring legislation had been removed from the Board's agenda. (*Id.* ¶ 34). Ms. Barber and other local minority business owners, including Defendants Geoffrey Taylor and Walter Cates, continued to oppose Plaintiff's rehiring. (*Id.* ¶¶ 35–38). Ms. Barber also expressed her opposition to Plaintiff's rehiring in the OhioMBE newsletter. (*Id.* ¶ 35).

On May 2, Mr. Oldham posted the Director of Purchasing position. (*Id.* ¶ 36). On May 6, Plaintiff provided Mr. Oldham with threatening letters he received from Mr. Taylor in 2010 and 2011 that he had forwarded to the School District's General Counsel but for which no action was ever taken by the Board. (*Id.* ¶ 39). On May 24, the School District assembled a panel to conduct interviews for Plaintiff's position, which included Mr. Oldham and Ms. Wise. (*Id.* ¶ 42). On May 30, Plaintiff sent a "memorandum" to Mr. Baker and the Superintendent, expressly requesting that the decision not to rehire him be reconsidered and that the hearing be rescheduled. (*Id.* ¶ 43). Thereafter, the interviews for the Director of Purchasing position scheduled to be held the next day were abruptly cancelled. (*Id.* ¶ 42 ). The same day, the Columbus Dispatch published an article titled "Black contractors opposed Columbus schools rehiring administrator." (*Id.* ¶ 44). The article described how minority vendors were campaigning against Plaintiff and included statements by Mr. Cates and Mr. Taylor accusing Plaintiff of being culturally insensitive, referring to him as a "cancer," and equating him to a racist. (*Id.*). Plaintiff's employment with the School District ended on May 31. (*Id.* ¶ 45).

According to Plaintiff, "it is absolutely false that [he] is racist[.]" (*Id.* at p. 6). During his time as the Director of Purchasing, he "worked tirelessly to enhance the opportunities of Economically Disadvantaged Enterprises in the LEDE program." (*Id.*). In response to Plaintiff hiring legal counsel to investigate the Board's decision, the Board conducted an analysis of the Purchasing Department's awarding of contracts to LEDE vendors and concluded that there was

"no evidence of overt violations of the Board's bylaws, policies or administrative guidelines, and Plaintiff had not engaged in any actions to interfere with minority contracts." (*Id.* ¶¶ 45, 47).

On October 5, 2018, Plaintiff filed an Amended Complaint alleging ten causes of action. (ECF No. 62). Relevant to the City School Defendants,[2] Plaintiff claims: race discrimination in violation of 42 U.S.C. § 1981, race discrimination in violation of 42 U.S.C. § 1985, race discrimination in violation Ohio Revised Code § 4112.02(A), aiding and abetting race discrimination in violation of Ohio Revised Code 4112.02(J), common law civil conspiracy, and an Equal Protection violation pursuant to 42 U.S.C. § 1983. The City School Defendants filed a joint Answer on November 2, 2018. (ECF No. 70).

On May 2, 2019, the City School Defendants filed a joint Motion for Judgment on the Pleadings. (ECF No. 115). Plaintiff filed his Response in Opposition on June 13. (ECF No. 119). Defendants filed their Reply brief on June 27. (ECF No. 121). The matter is now ripe for review.

## II.    STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). All allegations in the plaintiff's complaint are construed in the light most favorable to him, with all allegations accepted as true and all reasonable inferences drawn in the plaintiff's favor. *Bullington v. Bedford Cty., Tenn.*, 905 F.3d 467, 469 (6th Cir. 2018). "To overcome a defendant's motion, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'Plausibility'

---

[2] The City School Defendants are the Board, the individual Board Members, Mr. Oldham, and Ms. Wise.

occupies that wide space between 'possibility' and 'probability.'" *Keys v. Humana, Inc*., 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Id.*

## III.  ANALYSIS

### A.  Race Discrimination Claims

Plaintiff alleges race discrimination under several different theories of federal and state law. The Court will take each one in turn.

#### 1.  Claim One - 42 U.S.C. § 1981

Plaintiff's first claim for relief alleges a 42 U.S.C. § 1983 claim for race discrimination in violation of 42 U.S.C. § 1981 against each Board Member in their individual capacity.

42 U.S.C. § 1981 prohibits race discrimination in both making and enforcing contracts involving public and private actors. *Amini v. Oberlin Coll*., 440 F.3d 350, 358 (6th Cir. 2006). Specifically, it provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship . . . so long as the plaintiff has or would have rights under the . . . proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Defendants argue that Plaintiff's first claim for relief fails because they are entitled to qualified immunity. "Qualified immunity shields public officials who perform discretionary

6

functions from tort liability, so long as their conduct does not violate clearly established rights viewed under the applicable constitutional standard[.]" *Lanman v. Hinson*, 529 F.3d 673, 683 (6th Cir. 2008). It is "an affirmative defense that, once asserted, shifts the burden of proof to the plaintiff to show that the defendant is not entitled to qualified immunity[,]" which is determined on a "fact-specific, case-by-case basis." *Id.* (internal quotations omitted).

In order to determine if Defendants are entitled to qualified immunity, the Court uses a two-part test: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Id.* (internal quotations omitted). Here, there is no question that there exists a clearly established constitutional right to be free from race discrimination when seeking to make a contract. *See Williams v. Richland Cty. Children Servs.*, 489 Fed. Appx. 848, 854 (6th Cir. 2012) ("If any 'right' under federal law is 'clearly established,' it is the constitutional right to be free from racial discrimination."); *Amini*, 440 F.3d at 358. Rather, Defendants argue that Plaintiff has failed to "allege, with particularity . . . what *each* defendant did to violate the asserted constitutional right," as is required for "damage claims against government officials arising from alleged violations of constitutional rights." *Lanman*, 529 F.3d at 684; *see also Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (holding that "damage claims against government officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations"). A district court must separately analyze the constitutionality of the individual actions of each defendant, *Lanman*, 529 F.3d at 684, because government officials are personally liable for damages "only for their own unconstitutional behavior." *Leach v. Shelby Cty. Sheriff,* 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff alleges that each of the Board Members, in their individual capacities, kept him

7

from forming a contract for employment with Columbus City Schools when the Board removed his rehire legislation from the May 16, 2017 agenda because there were not enough votes to rehire him. (Amend Compl., ¶¶ 34, 53). Plaintiff further claims that this action was taken based on his race. (*Id.* ¶ 53). Although Plaintiff does not specify each Board Member's direct involvement in this decision, the Board, by its nature, acts as a collective entity based on the voting power of each individual member. *See Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 512 (6th Cir. 1996) (explaining that school board members are unable to act except as constituent members of a majority). This differs from generally ascribing the acts of *all Defendants* to each individual Defendant. *Heyne v. Metro. Nashville Public Schools*, 655 F.3d 556, 564 (6th Cir. 2011). By virtue of identifying each individual Board Member and including the specific actions taken by the Board that resulted in the alleged constitutional violation, Plaintiff's allegations contain enough specificity against the Board Members to survive Defendants' Motion. *See Peelman v. Delaware Joint Voc. School Dist. Bd. of Educ.*, 763 F. Supp. 268, 270–71 (S.D. Ohio 1991) (holding that the individual school board members were not entitled to qualified immunity under § 1983 where the plaintiff alleged that the board members voted not to renew her teaching contract based on her participation in a union, thereby violating her right to free association).

Accordingly, the Board Members are not entitled to qualified immunity and Defendants' Motion is **DENIED** as to Plaintiff's first claim for relief.

### 2.    Claim Two - 42 U.S.C. § 1985

Plaintiff's second claim for relief alleges civil conspiracy in violation of 42 U.S.C. § 1985 against Cole, Gibbs, Oldham, Wise, Barber, Watson, Taylor, and Cates.

Because the School Defendants (Cole, Gibbs, Oldham, and Wise) are officers and employees of the same entity, as a matter of law, the actions amongst them cannot give rise to a

8

claim for conspiracy. *Hull v. Cuyahoga Valley Joint Voc. School Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991). Defendants argue that Plaintiff's § 1985 claim lacks facts to allow the Court to reasonably infer that these named School Defendants acted in coordination with Barber, Watson, Taylor, and/or Cates to treat Plaintiff differently than other similarly situated African Americans.

"[T]o make out a violation of § 1985(3) . . . the plaintiff must allege . . . four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005). A plaintiff's complaint must also allege that "the conspiracy was motivated by a class-based animus." *Nuchols v. Berrong*, 141 Fed. Appx. 451, 454 (6th Cir. 2005) (internal quotations omitted). Importantly, "[u]nder [§] 1985, a plaintiff must plead his civil rights conspiracy charge with factual specificity; mere conclusory allegations will not survive a motion to dismiss." *Ashiegbu v. Purviance*, 76 F. Supp. 2d 824, 830 (S.D. Ohio 1998).

Here, Plaintiff alleges that these Defendants acted "with a common discriminatory objective in a manner meant to or resulting in Plaintiff being treated differently than other similarly situated African-Americans" and "took actions in furtherance of the conspiracy to interfere with Plaintiff's employment with the Columbus City Schools which were directly motivated by the Plaintiff's race as Caucasian." (Amend Compl., ¶¶ 62–63). These conclusory statements are insufficient to allege with specificity a civil conspiracy claim under § 1985.

9

Nowhere in the Amended Complaint does the Plaintiff specify what actions were taken by the
School Defendants, in agreement—either expressly or implicitly— with the Non-School
Defendants, in furtherance of the alleged conspiracy. To illustrate, Plaintiff makes only the
following allegations regarding specific communication or interaction between the School
Defendants and the Non-School Defendants in his Amended Complaint:

- Ms. Wise provided a list of LEDE vendors to Ms. Watson for a NAACP focus group
  meeting on March 30, 2017. (¶ 29).

- Ms. Watson copied Ms. Wise, Mr. Oldham, and unidentified Board Members on an e-
  mail invitation to LEDE vendors for the March 30 meeting. (*Id.*).

- Mr. Cole and Ms. Gibbs attended the March 30 NAACP meeting. (¶ 30).

- Mr. Oldham sent an e-mail to Ms. Watson to confirm the scheduling of a second
  NAACP focus group meeting. (*Id.*).

- On April 20, Mr. Oldham was informed that unidentified Defendants, NAACP, Ms.
  Watson, Ms. Barber, and other minority activists were resisting Plaintiff's rehire. (¶
  32).

- This resistance was described in e-mails between Ms. Barber and Ms. Watson, which
  were forwarded to Ms. Wise and Mr. Oldham. (*Id.*).

- Mr. Oldham and unidentified Board Members received an e-mail from Ms. Barber
  that accused Plaintiff of being racist. (¶ 33).

- On May 6, Plaintiff e-mailed Mr. Oldham two threatening letters that he had received
  years earlier from Mr. Taylor. (¶ 39).

- On May 11, a School District Administrator forwarded one of Ms. Barber's articles to
  Mr. Oldham, "which included negative and libelous comments made by the

Defendants." (¶ 40).

None of these claims allege with particularity any material facts that allow the Court to plausibly infer coordinated action by Mr. Cole, Ms. Gibbs, Mr. Oldham, and/or Ms. Wise and the Non-School Defendants to interfere with Plaintiff's rehire based on his race. *See Clemens v. Mount Clements Community School District*, 305 F. Supp. 3d 759, 775 (E.D. Mich. 2018) ("A plaintiff must allege some evidence of coordinated actions between the alleged conspirators.") (citing *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999)).

Even if the Court found that failing to rehire Plaintiff because the School Defendants deemed him to be a racist was the same as discriminating against him based on race (which it is not) Plaintiff's general allegation that there was "concerted conduct between the Defendants to portray Plaintiff as a racist and interfere with [the Board's] decision" (Amend Compl., ¶ 45) is not sufficiently specific as to each Defendant to allege a § 1985 conspiracy claim. *See Barkovic v. Atty. Grievance Comm'n*, 289 F. Supp. 3d 833, 843 (E.D. Mich. 2017) (under section 1985, a plaintiff must plead that each government-official defendant, through his own individual actions, has violated the Constitution). Finally, according to the Amended Complaint, "Defendant Board Members failed to rehire Plaintiff in good faith, based upon the available facts and their independent judgment. Instead Defendant Board Members allowed themselves to succumb to the influence of individuals and special interest groups." (Amend Compl., ¶ 41). That the School Defendants may have been pressured or otherwise influenced by the Non-School Defendants is not the same as conspiring with the Non-School Defendants not to rehire Plaintiff based on race.

Accordingly, Defendants' Motion is **GRANTED** as to Plaintiff's second claim for relief.

### 3.    Claim Five - Ohio Rev. Code § 4112.02(A)

Plaintiff's fifth claim for relief alleges race discrimination in violation of Ohio Revised

11

Code § 4112.02(A) against the Columbus Board of Education based on cat's paw theory.

Defendants argues that this claim fails because it is unsupported by any factual basis.

Under Ohio Revised Code § 4112.02(A), "[i]t shall be unlawful discriminatory practice . . . [f]or any employer, because of race . . . to refuse to hire, or otherwise discriminate against that person with respect to hire." The Sixth Circuit describes the cat's paw theory of liability as follows:

> When an adverse . . . decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that the employer may be held liable under a . . . "cat's paw" theory of liability. . . . To succeed on a cat's-paw theory, the employee must offer evidence of a causal nexus between the ultimate decisionmaker's decision to terminate the [employee] and the supervisor's discriminatory animus. In other words, the employee must show that, [b]y relying on this discriminatory information flow, the ultimate decisionmakers acted as the conduit of the supervisor's prejudice—his cat's paw. However, a causal nexus is lacking if the ultimate decision was based on an independent investigation and the employee presented no evidence that the supervisor's discriminatory animus had influenced the decision.

*Bishop v. Ohio Dep't of Rehab. and Corrs.*, 529 Fed. Appx. 685, 696 (6th Cir. 2013) (internal citations and quotations omitted).

Plaintiff claims that despite his qualifications and good performance reviews, the Board Members, "who are, when considered individually, subordinates of [the Board] with no decision making authority regarding the hiring of Plaintiff," refused to vote to rehire Plaintiff and removed the rehire legislation from the Board's agenda solely based on Plaintiff's race. (Amend Compl., ¶¶ 34, 86, 90–91). In other words, Plaintiff alleges that the Board violated Ohio Rev. Code 4112.02(A) when it acted as the conduit of the Board Members in refusing to rehire Plaintiff because he is Caucasian. This is sufficient to meet the notice pleading standard under Fed. R. Civ. P. 8. Plaintiff is not required to allege "specific detail and a description of any action taken by the School Defendants that could possibly evince *racial* animus toward Plaintiff" (Defs.

12

Motion, 13, ECF No. 115) at the judgment on the pleadings stage. Nor is Plaintiff required to prove a "causal nexus" as this juncture. (*Id*. at 14).

Accordingly, Defendants' Motion is **DENIED** as to Plaintiff's fifth claim for relief.

### 4. Claim Six – Ohio Revised Code § 4112.02(J)

Plaintiff's sixth claim for relief alleges aiding and abetting an unlawful discriminatory practice in violation of Ohio Rev. Code 4112.02(J) against Cole, Gibbs, Oldham, and Wise, as well as several Non-School Defendants.

Ohio Rev. Code 4112.02(J) makes it unlawful for any person to "aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." Defendants argue that this claim fails because it is derivative of Count V. Because Count V survives, this argument is without merit and Defendants' Motion is **DENIED** as to Plaintiff's sixth claim for relief.

### B. Claim Eight - Common Law Civil Conspiracy

Plaintiff's eighth claim for relief alleges civil conspiracy in violation of Ohio law against Cole, Gibbs, Oldham, Wise, Barber, Watson, Taylor, and Cates.

To state a claim for civil conspiracy under Ohio law, the plaintiff must allege (1) a malicious combination; (2) of two or more persons; (3) resulting injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *Rosy Blue, NV v. Lane*, 767 F. Supp. 2d 860, 868 (S.D. Ohio 2011) (citing *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.,* 219 F.3d 519, 534 (6th Cir. 2000)). The requirement of malicious combination to injure "does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent and Awning Co.*, 233 F. Supp. 2d 934,

945 (S.D. Ohio 2002) (internal quotations omitted). Defendants argue that Plaintiff has not sufficiently pled the first and fourth element.

This Court has held that there is no requirement that a common law conspiracy claim must be pled with particularity. *In re Nat'l Century, Fin. Enters., Inc*., 504 F. Supp. 2d 287, 329 (S.D. Ohio 2007). However, as previously discussed, there are no allegations—even generally—that support the existence of a "common understanding" between the School Defendants and the Non-School Defendants to not rehire Plaintiff based on his race. And the Court is not required to accept Plaintiff's conclusory allegation that "Defendants maliciously conspired and/or combined to injure Plaintiff by . . . aiding and abetting in race discrimination" (Amend Compl., ¶ 113) as true. *See Fugate v. Erdos*, No. 1:19-cv-30, 2019 WL 5073505, at *1 (S.D. Ohio Oct. 9, 2019) (explaining that a court "will not accept conclusions of law or unwarranted inferences which are presented as factual allegations").

Accordingly, Defendants' Motion is **GRANTED** as to Plaintiff's eighth claim for relief.

### C.    Claim Nine - Equal Protection Violation

Plaintiff's ninth claim for relief alleges a violation of the Equal Protection clause of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 against the Board Members, Ms. Wise, and Mr. Oldham. Defendants argue that because the Amended Complaint fails to assert the Equal Protection claim against Defendants in their individual capacities, it must be considered to be brought against them in their official capacities, converting it to a claim against the Board as an entity. Plaintiff responds that the Amended Complaint makes clear that he only intended to sue Defendants in their individual capacities in Count IX.

"[I]t is clearly preferable that plaintiffs explicitly state whether a defendant is sued in his or her 'individual capacity.'" *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001). However, failure to do so is not fatal. *Id.* When a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, the Sixth Circuit instructs courts to apply a "course of proceedings" test to determine whether § 1983 defendants have received sufficient notice that a plaintiff intends on holding them individually liable absent clear labeling. *Id.* This entails looking to the nature of the claims and the filings to date to determine whether proper notice has been given. *Id.*

Taken as a whole, the Amended Complaint provides sufficient notice to Defendants that they are being sued as individuals. In the caption of the Amended Complaint, Plaintiff lists each Board Member's name, their title, and the parenthetical "individually." While Plaintiff does not include the same parenthetical for Mr. Oldham and Ms. Wise, he omits their official titles altogether, including only "c/o Columbus City Schools" and the School District's address. *See id.* Under Count IX, Plaintiff initially refers to each Defendant by their individual name, as opposed to their official title. (Amend Compl., ¶ 118). Plaintiff also requests monetary damages under this cause of action, which is only available in § 1983 claims against defendants in their individual capacities. *Fugate*, 2019 WL 5073505, at *2.

Moreover, even if the Amended Complaint itself failed to explicitly state that Defendants were being sued in their individual capacities, "[s]ubsequent filings in a case may rectify deficiencies in the initial pleadings." *Moore*, 272 F.3d at 774. Here, Plaintiff's Memorandum in Opposition clarifies any ambiguity and puts Defendants on sufficient notice of "Plaintiff's intent to hold [Defendants] personally liable" under Count IX. (Pl. Memo. Opp., 6, ECF No. 119). *See Abdur-Rahman v. Michigan Dep't of Corrs.*, 65 F.3d 489, 491 (6th Cir. 1995) (reversing dismissal of a plaintiff's § 1983 claims, because the plaintiff's response to the defendants'

15

motion for summary judgment provided sufficient notice that the action had been brought against them in their individual capacities).

Because the Court finds that Plaintiff provided sufficient notice that Defendants are being sued in their individual capacities as to Count IX, the remainder of Defendants' *Monell*[3] argument is irrelevant. Defendants' Motion is **DENIED** as to Plaintiff's ninth claim for relief.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the City School Defendants' Motion for Judgment on the Pleadings. (ECF No. 115).

**IT IS SO ORDERED.**

 /s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE

---

[3] *Monell v. New York City Dep't of Soc. Services*, 436 U.S. 658 (1978) first recognized that in order to state a claim for relief under federal law against a municipality (which extends to school boards), the plaintiff must allege that his injuries were the result of a "policy or custom" of the municipality.